IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMIE RICHARDSON (2020-1128138), | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-cv-784 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| MILES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Jamie Richardson, brings this action pursuant to 42 U.S.C. §1983, alleging that his Fourteenth Amendment rights were violated when defendant Cook County Sheriff's Officers Bernal, Downes, Harper, Hejaz, Jefferson, Miles, Santana, and Valadez used excessive force while plaintiff was restrained during an incident at the Cook County Jail on December 4, 2022. Defendants have collectively moved for summary judgment, (Dckt. #74), arguing that: (1) they are entitled to qualified immunity; (2) there is no evidence of excessive force; and (3) plaintiff's claims are barred by the holding in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), and its progeny. Because there remains a disputed issue of material fact as to whether defendants used excessive force during the incident on December 4, 2022, and success on a claim brought pursuant to 42 U.S.C. §1983 is not incompatible with plaintiff's disciplinary record in this case, defendants' motion for summary judgment is denied.

I.   **LEGAL STANDARD**

   A.   **Standard for Summary Judgment**

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

1

law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment *unless* it is a genuine dispute as to a material fact).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248. Of course, "[i]t is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

In determining whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party. *King v. Hendricks Cnty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). Yet, the nonmovant "is not entitled to the benefit of inferences that are supported only by speculation or conjecture." *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). Ultimately, summary judgment is granted only if "no

reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up).

### 1. Requirements of Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). In turn, Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Here, because plaintiff is proceeding *pro se*, defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dckt. #66). Plaintiff then responded to the motion for summary judgment but did not fully and

3

properly respond to defendants' L.R. 56.1 statement of facts because he failed to support at least some of his responses with citations to the record. (*See, e.g.*, Dckt. #78 at 6 (failing to respond to DSOF ¶¶31-32 with citations to the record)). Additionally, some of plaintiff's responses are argumentative, or quibble with the record in a manner as to render the dispute not material. (*Id.* (disputing the name of the nurse who provided him with medical care after the incident in response to DSOF ¶¶27-28)).

As such, the Court will consider plaintiff's responses only to the extent they are supported by the record or contain information about which plaintiff could properly testify. *See James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020); *Sistrunk v. Khan*, 931 F.Supp.2d 849, 854 (N.D.Ill. 2013). Additionally, the Court need not consider factual assertions that conflict with prior, sworn testimony, as well as hearsay statements, legal arguments and conclusions set forth as "facts," any declaration that speculates as to other people's mindsets, and statements concerning matters about which only an expert could properly testify. *See Jones v. DeJoy*, No. 18 CV 1213, 2020 WL 6716218, at *1 (N.D.Ill. Nov. 16, 2020) (striking offending portions of Rule 56.1 statements that were "riddled with argument, unsupported assertions, and in some cases factual allegations beyond those set forth in the paragraph to which [plaintiff] was responding"); *Campbell v. City of Chi.*, No. 16 CV 6000, 2018 WL 4637377, at *1 (N.D.Ill. Sep. 27, 2018) ("Purely argumentative denials, legal conclusions, and unsupported general denials do not belong in Local Rule 56.1 statements."). The Court will also not look beyond any cited material. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("[D]istrict courts . . . are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them."). Where plaintiff has not properly responded to defendants' statements of fact, the Court will accept them as true to the extent

4

supported by the record. *Lamz*, 321 F.3d at 683.

Finally, the Court notes that plaintiff submitted a statement of additional facts in response to defendants' motion pursuant to Local Rule 56.1(b)(3). (Dckt. #77 ("PSOAF")). To the extent those statements of additional fact are properly supported by the record, the Court will deem them admitted because – despite being given the opportunity to do so – defendants failed to respond to plaintiff's statement of additional facts or even file a substantive reply brief in support of their motion. *See Hunter v. Sood*, No. 13-CV-2569, 2015 WL 3631636, at *1 (N.D.Ill. June 10, 2015) ("Because the moving party here . . . did not submit a reply, [plaintiff's] statement of additional facts are deemed admitted").

## II.   FACTUAL RECORD

The following facts are undisputed unless otherwise noted:

Plaintiff Jamie Richardson, at all relevant times, was a pretrial detainee housed at the Cook County Department of Corrections.[1] (Dckt. #67 ("DSOF") ¶1). Defendants Tomas Bernal, Michael Downes, Tansy Harper, Abed Hejaz, Brandon Jefferson, Robert Miles, Edwin Santana, and Robert Valadez were, at all relevant times, Cook County Sheriff employees. (*Id*. ¶¶2-9).

On December 4, 2022, plaintiff – while restrained in blue box handcuff restraints and leg shackles – refused to "lock up" (*i.e.*, return to his cell) per orders from defendant Hejaz, resulting in Sgt. Harper being called to the tier. (*Id*. ¶¶13, 15). Sgt. Harper and several other defendants

---

[1] Defendants' statement of facts asserts – with citation to the verified complaint – that plaintiff was a convicted prisoner temporarily housed at the Cook County Jail during the relevant time period. (DSOF ¶1). However, the operative verified complaint, (Dckt. #39 at 7), as well as plaintiff's response to defendants' statement of fact, (Dckt. #78), defendants' memorandum in support of their motion, (Dckt. #68 at 6), and defendants' Exhibit 1, (Dckt. #67-1), all indicate that plaintiff was a pretrial detainee at the time of the underlying incident. Accordingly, the Court will treat him as such and analyze his claim of excessive force under the Fourteenth Amendment standard applicable to pretrial detainees.

5

then arrived at the tier, at which point Sgt. Harper ordered defendants Bernal, Downes, Hejaz, Miles, and Santana to escort plaintiff to his cell. (*Id*. ¶14). According to defendants, when Bernal, Downes, Hejaz, Miles, and Santana attempted to remove the blue box restraints outside the cell, plaintiff began to resist by pulling his body away, flailing around to evade control, and "gather[ing] saliva to prepare to spit on several defendants." (*Id*. ¶¶15-17). For his part, plaintiff maintains that any resistance during this time was because his handcuffs were too tight. (PSOAF ¶7). In any event, Miles then grabbed plaintiff – who was still secured in handcuffs and leg shackles – by the back of the neck and forced plaintiff into a position so he was facing the floor. (*Id*. ¶9). Plaintiff was then stood straight up and again taken to the floor, all while restrained. (*Id*. ¶12).

While on the ground, defendants maintain that plaintiff attempted to spit at Miles, and defendants continued to use force to restrain him. By defendants' own admission, that use of force consisted of the following: (1) Miles delivered four closed hand strikes to the back of plaintiff's head; (2) Downes delivered one diffused pressure strike to the back of plaintiff's head; (3) Bernal delivered one closed hand strike and two knee strikes to plaintiff's back; and (4) Hejaz delivered six closed hand strikes to plaintiff's body before being instructed to stop by Sgt. Harper. (DSOF ¶¶18-21; PSOAF at 6-9[2]). Plaintiff was once again returned to a standing position. (PSOAF at 7-8). When plaintiff again began resisting, in part by becoming dead

---

[2] It is unclear whether the four-page email chain from December 7, 2022, to January 12, 2023, between Heather Bock (Director, Use of Force Unit) and Dan Korso (Special Counsel) is part of the formal record maintained by Cook County as part of its Use of Force Report Supervisory Review. Given the review's several references to "detail in assessment," however, the Court assumes at this point in the proceedings that this material is admissible under the business record exception to hearsay and may therefore be considered on summary judgment. *See* Fed. R. Evid. 803(6); *see Cheeks v. General Dynamics*, 22 F.Supp.3d 1015, 1027 (D.Ariz. 2014), *aff'd*, 684 Fed.Appx. 658 (9th Cir. 2017) (considering evidence for purposes of summary judgment where evidence could "conceivably" be admissible at trial). And, again, defendants did not file a reply to argue that this document – relied upon by plaintiff – is otherwise inadmissible.

weight, and perhaps preparing to spit at Miles, he was taken down to the floor where defendants again used force, including: (1) Miles delivered a closed hand strike; (2) Downes delivered three strikes; (3) Bernal delivered two knee strikes; and (4) Hejaz delivered five closed hand strikes and a knee strike. (*Id*.). Plaintiff was secured in handcuffs and leg iron shackles during the entire time that defendants beat him. (PSOAF at 5). At some point, defendants Valadez and Jefferson arrived on the scene and assisted in restraining plaintiff. (DSOF ¶¶23-25). Ultimately, defendants brought plaintiff back on his feet and he continued to verbally disrespect staff while they escorted him to a holding cell. (*Id.* ¶26).

Plaintiff was seen by a nurse on the same day of the incident at 2:53 p.m. (*Id*. ¶27). Plaintiff experienced headaches and pain and aching in his body and head as a consequence of being beaten by defendants. (Dckt. #78 at 6 (citing Dckt. #75 at 17)). The nurse examined plaintiff, determined that he had no bruises and no swelling and provided him with Tylenol. (DSOF ¶28).

A disciplinary hearing was conducted on December 7, 2022, regarding the December 4, 2022 incident. (*Id*. ¶30). The narrative section of the Inmate Disciplinary Report indicates that the officers' use of force on December 4, 2022, was an effort "to prevent battery to staff with bodily fluids" given that plaintiff "is a documented spitter" and had begun "gathering spit in his mouth." (*Id.*; Dckt. #67-3 at 123). According to the narrative, after being taken to the ground, plaintiff "made multiple attempts to spit on Officer Miles." (Dckt. #67-3 at 123). In the inmate response section of the report – and continuously during this matter – plaintiff denied that he gathered spit in his mouth or ever attempted to spit on defendants. (*Id.* at 125; Dckt. #67-2 at 12). Nonetheless, plaintiff has multiple documented batteries to staff with bodily fluids, urine and/or fecal matter and saliva, and he has an active spitter alert. (DSOF ¶29).

On December 9, 2022, plaintiff was found guilty in the disciplinary proceeding of three charges: disobeying or resisting orders, disrespect to staff, and attempted battery to staff. (DSOF ¶31). As a result, plaintiff was placed in rehabilitation housing for forty-two days, lost visitation for ninety days, and lost thirty days of good time credit. (*Id*. ¶32). Plaintiff disagreed with the decision of the hearing officer and the consequences he received from the disciplinary hearing. (*Id*. ¶¶33-34).

The record also reflects that as a result of the December 4, 2022 incident, investigators at the Cook County Jail conducted a use of force review. (PSOAF ¶16). The Cook County Sheriff's Office use of force review unit reviews all reported use of force incidents in the Cook County Department of Corrections to ensure the use of force applied was in accordance with state law, federal law, and department policies and procedures. (*Id*. ¶19). The head of the use of force review unit investigated the underlying incident, determined certain use of force during the incident was not in accordance with department policies, and recommended further training for Hejaz. (Dckt. #77 at 11). The Supplemental Training Recommendation Form specifically notes, "Officer Hejaz continued to strike the Subject to the body after control was established by Staff. Officer Hejaz was grabbed and told to stop by Sergeant Harper and Intervention was seen by Officer Jefferson." (*Id.*).

### III. ANALYSIS

Again, defendants seek summary judgment arguing that: (1) they are entitled to qualified immunity; (2) there is no evidence of excessive force during the December 4, 2022, incident; and (3) plaintiff's claim is barred by *Heck*, 512 U.S. at 487, and its progeny. Because there remain disputed issues of material fact regarding the reasonableness of defendants' use of force, and plaintiffs' claim is not otherwise barred under *Heck*, defendants have failed to meet their burden

8

on summary judgment and the motion is denied.

### A. Defendants are not entitled to qualified immunity on plaintiff's excessive force claim.

Government officials like the Cook County correctional officers here are protected by qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223 (2009) (cleaned up). "There are two inquiries in determining whether qualified immunity applies: [1] whether the facts, taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right; and [2] whether the right at issue was 'clearly established' at the time of the officer's alleged misconduct." *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023) (cleaned up). Although this is ordinarily a two-step process, where the undisputed facts taken in the light most favorable to the plaintiff fail to establish a cognizable violation of constitutional rights, defendant is entitled to qualified immunity. *See, e.g., Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 472 (7th Cir. 1997).

Therefore, the Court begins with an analysis of whether there is any merit to plaintiff's underlying constitutional claim. Once more, plaintiff asserts that he was subjected to excessive force by defendants while handcuffed and shackled on December 4, 2022. The Due Process Clause of the Fourteenth Amendment governs claims of excessive force by a pretrial detainee. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). Under the Fourteenth Amendment, an officer's use of force is excessive when it amounts to punishment. *Id.* at 397. This can occur when force is used with "an 'expressed intent to punish,'" is "not 'rationally related to a legitimate governmental purpose,'" or "'appear[s] excessive in relation to that purpose'" when viewed objectively. *Id.* at 398, *quoting Bell v. Wolfish*, 441 U.S. 520, 538, 561 (1979).

To prevail on an excessive force claim, "a pretrial detainee must show only that the force

purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97. Whether the force was objectively unreasonable "turns on the facts and circumstances of each particular case," and depends on factors such as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; [and] any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397 (cleaned up). These factors should be considered from the perspective of what a reasonable officer on the scene would have understood, not through the use of hindsight. *Id.*

Here, as outlined above, the record establishes that (1) plaintiff was restrained in handcuffs and leg iron shackles throughout the entirety of the incident on December 4, 2022; (2) at a minimum, plaintiff – who denies spitting – was not fully compliant and was somewhat resisting defendants' orders; and (3) defendants believed plaintiff – a "documented spitter" – was attempting to spit on them. The record is also replete, however, with defendants' own admissions of the significant use of force they used on plaintiff during two successive takedowns, including multiple closed fist strikes to the head, and punches and knees to plaintiff's body and back, from four of the seven defendants called on to subdue a single detainee who was fully restrained in handcuffs and leg iron shackles and who was forcibly pinned to the ground for at least part of the incident. Closed fist strikes to the head, such as those admittedly used here, "at the very least constitute[ ] significant force" given that "the head is a particularly fragile part of the human body" to which such strikes pose a "unique danger." *Lewis v. Caraballo*, 98 F.4th 521, 531-32 (4th Cir. 2024) (citing cases). Additionally, Cook County's own investigation of the incident led to a finding that the use of force by at least one of the defendants was not in

10

compliance with the Cook County Department of Corrections policies on the use of force, resulting in further training on the use of force.

With respect to the video recordings of the incident, this Court cannot conclude, as the Supreme Court did in *Scott v. Harris*, 550 U.S. 372, 380 (2007), that "[plaintiff's]'s version of the facts 'is so utterly discredited by the record that no reasonable jury could [ ] believe[] him.'" *Lust v. Razzino, et al.*, No. 08 C 7346, 2010 WL 845942, at *7 (N.D.Ill. 2010), *quoting Scott*, 550 U.S. at 380. Indeed, while the full nature of the incident is difficult to see given the number of officers involved, at a minimum, the video shows multiple defendants taking plaintiff to the ground, on multiple occasions, and inflicting significant force upon his body while he was restrained. And, although Sgt. Harper and others can be heard repeatedly yelling "stop spitting," plaintiff cannot be seen spitting on the video and no defendant claimed that they had been spat upon.[3]

Viewing the facts in the light most favorable to plaintiff, the Court cannot say that defendants' use of force was objectively reasonable. Furthermore, it was clearly established as of the date of the incident (December 4, 2022) that it is objectively unreasonable for an officer to use significant force on an unresisting or passively resisting subject. *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 732 (7th Cir. 2013) ("it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects"); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) (dismissing appeal of denial of qualified immunity in excessive force case; issue of fact existed as to whether officers applied "wholly gratuitous" force against subdued suspect not resisting arrest). This prohibition applies even though the detainee may previously have refused to comply with officers' orders or even posed a threat to

---

[3] This is consistent with the fact that Richardson was charged and found guilty of "attempted battery" rather than "battery."

11

officer safety. *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014).

In sum: because a reasonable fact finder could find that the force used by defendants was objectively unreasonable, defendants are not entitled to qualified immunity and an issue of triable fact regarding plaintiff's excessive force claim remains.

> **B.** **Plaintiff's Excessive Force Claim is not *Heck* Barred.**

Because the Court has found that questions of fact remain as to whether the force used by defendants was reasonable, the sole remaining question is whether plaintiff's claim is barred by *Heck*, 512 U.S. at 487, and its progeny. Defendants argue that plaintiff's claim for excessive force is barred by the *Heck* doctrine based on plaintiff's convictions on disciplinary charges for resisting orders and attempted battery. The Court disagrees.

*Heck* "holds that that the plaintiff in an action under 42 U.S.C. §1983 may not pursue a claim for relief that implies the invalidity of a criminal conviction, unless that conviction has been set aside by appeal, collateral review, or pardon" and the doctrine extends to the decisions of prison disciplinary tribunals. *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008). "As a general proposition, a plaintiff who has been convicted . . . is not *per se Heck*-barred from maintaining a §1983 action for excessive force stemming from the same confrontation." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) (emphasis in original); *Hardwick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008) (same); *Hemphill v. Hopkins*, No. 08 C 157, 2011 WL 6155967, at *2 (N.D.Ill. Dec. 12, 2011) ("Settled precedent is clear: *Heck* does not bar an excessive force claim if the plaintiff, putting aside any challenge to his conviction, proceeds on the theory that" the degree of force applied was unreasonable under the circumstances.").

Under *Heck*, only a claim that "necessarily" implies the "invalidity of a conviction" is barred. *Gilbert*, 512 F.3d at 902. To properly analyze *Heck*, a court "must consider whether a

12

judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . if so, the complaint must be dismissed until the plaintiff can show the conviction or sentence has been invalidated." *VanGilder v. Baker*, 435 F.3d 689, 691-92 (7th Cir. 2006). However, "[t]he Seventh Circuit has repeatedly held excessive force claims containing this sequence of events—resistance to a lawful order followed by allegedly excessive force—are not *Heck*-barred." *Davis v. Duncan*, No. 20 CV 2409, 2022 WL 4483926, at *3 (S.D.Ind. Sept. 27, 2022).

Here, the record establishes that plaintiff was convicted of three disciplinary infractions, including for "resisting orders" and "attempted battery," due to the December 4, 2022, incident. The record evidence indicates that the "attempted battery" conviction was due to the fact that plaintiff was gathering spit in his mouth and made multiple attempts to spit on Miles. But, again, a plaintiff who has been convicted of resisting an officer is not barred from contending that the officer "used force that was unreasonable in relation to the nature of [the plaintiff's] obstruction" because his contention "can be resolved in [his] favor without casting any doubt on the validity of his conviction." *Johnson v. Rogers*, 944 F.3d 966, 968 (7th Cir. 2019) ("The propositions 'the suspect resisted arrest' and 'the police used too much force to effect the arrest' can be true at the same time.").

Thus, even if plaintiff's complaint, (Dckt. #39), might be read to suggest that he never offered any resistance at all, it is clear from his response brief[4] and his proposed amended complaint, (Dckt. #91), that he is willing to proceed with his claims to whatever extent they are based on the excessive force with which defendants responded to his resistance and, as such, his

---

[4] *See* Dckt. #75 at 4 ("First off Plaintiff is not seeking to get good time credit restored or [to] reverse the hearing officer's decision, Plaintiff is stating that these officers used excessive force during the incident.").

13

claims are compatible with his conviction. Plaintiff is entitled to proceed on the understanding that the scope of his claims is limited in that way, and he need not "adopt the defendants' view of what occurred in order to contest the degree of force used." *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010); *see Gates v. Bathon*, No. 14-cv-0018-MJR-SCW, 2016 WL 362332, at *5 (S.D.Ill. Jan. 29, 2016). While plaintiff may not contend at trial that he *never* resisted or obstructed any correctional officer in performing his duties, his claims are not *Heck*-barred to the extent that he claims only that defendants used excessive force against him.

Accordingly, the Court finds that plaintiff's excessive force claim is not barred by *Heck*, and defendants' motion for summary judgment is denied.[5]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment, (Dckt. #74), is denied.

**DATE:**     **March 21, 2025**

                                              **Jeffrey I. Cummings**
                                              **United States District Court Judge**

---

[5] Plaintiff has previously amended his complaint multiple times in this matter, most recently on November 7, 2023. Although plaintiff must seek leave of court prior to filing an amended complaint under Federal Rule of Civil Procedure 15(a)(2), plaintiff filed another "amended complaint" (Dckt. #91) on December 2, 2024, without first obtaining leave from this Court. Accordingly, that amended complaint is stricken and plaintiff can proceed on his current operative complaint. (*See* Dckt. #39).